UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LAWRENCE C. OLECHNA

        Plaintiff,

       v.                             **REPORT AND RECOMMENDATION**
                                            **08-CV-0398 (TJM)**

MICHAEL J. ASTRUE[1]
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I.    Introduction

Plaintiff Lawrence C. Olechna brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB").[2] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") denying his applications for benefits was not supported by substantial evidence and was contrary to the applicable legal standards. The Commissioner argues that the decision was supported by substantial evidence and was made in accordance with the correct legal standards.

For the reasons set forth below, the Court finds the Commissioner's decision is not supported by substantial evidence and not determined in accordance with the applicable law. Therefore, the Court recommends that the Plaintiff's motion for judgment on the pleadings be granted and Defendant's cross-motion for judgment on the

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the Defendant in this suit.
[2] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated May 8, 2009.

1

pleadings be denied.[3]

## II.   Background

On April 1, 2003, Plaintiff, then 47 years old, filed an application for DIB, claiming disability since May 28, 2002, because of low back and left leg impairments and related limitations (R. at 62-64).[4] His application was denied initially on May 27, 2003 (R. at 39-43). Plaintiff filed a timely request for a hearing on June 10, 2003 (R. at 44). Plaintiff and his attorney appeared before the ALJ on June 30, 2004 (R. at 27-38). On July 30, 2004, the ALJ issued a decision finding the Plaintiff not disabled (R. at 12-26). The Appeals Council denied review on November 3, 2004 (R. at 5-8) and the Plaintiff filed a civil action before this Court. The parties stipulated to a remand, which was ordered on March 9, 2005. (R. at 262-63). On July 27, 2005, the Appeals Council issued a remand order (R. at 266-70).

On July 19, 2007, Plaintiff and his attorney again appeared before an ALJ (R. at 380-425). The second ALJ considered the case *de novo* and, on January 22, 2008, issued a decision finding Plaintiff was not disabled (R. at 249-59). This became the final decision of the Commissioner when Plaintiff did not file exceptions and the Appeals Council did not assume jurisdiction on its own motion within 60 days. 20 C.F.R. §§ 404.984(a), (d). On April 10, 2008, Plaintiff filed this action disputing his disability determination.

Based on the entire record, the Court recommends remand because the ALJ

---

[3] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).
[4] Citations to the underlying administrative record are designated as "R."

applied an improper legal standard in assessing Listing 1.04A and because the RFC analysis is not supported by substantial evidence.

### III.   Discussion

#### A.  Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the

[Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984). The Commissioner has established a five-step sequential evaluation process[5] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the

---

[5] The five-step analysis is detailed as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

### B.  Analysis

#### 1.  The Commissioner's Decision

The ALJ followed the sequential analysis and concluded that Plaintiff was not disabled within the meaning of the Act (R. at 253). At step one the ALJ noted that since February 23, 2005, Plaintiff had worked part time at a hardware store (R. at 254). Nonetheless, the ALJ determined that Plaintiff had earned less than the guideline amount for substantial gainful activity, and therefore proceeded with the sequential analysis (R. at 254). At step two, the ALJ found Plaintiff's back and leg impairments severe, but did not find his depression, anxiety, hypertension or insomnia severe (R. at 255). At step three, the ALJ found that Plaintiff did not meet Listing 1.04A because on May 10, 2003, consultative orthopedic examiner, Dr. Michael R. Obrecht obtained negative results on a straight leg raising test and found no muscle atrophy of the left lower extremity (R. at 255). In assessing Listing 1.04A, the ALJ also rejected the opinions of consultative orthopedic specialist, Dr. Richard S. Goodman and one of Plaintiff's treating physicians, Dr. Naron Keo, that Plaintiff met Listing 1.04A (R. at 255). At step four, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to lift and carry fifteen pounds occasionally and less than ten pounds frequently; stand and walk two hours in a work day for twenty to thirty minutes at a time; and sit for six

hours in a day for thirty minutes at a time; but Plaintiff could not do repetitive pushing and pulling with any of his extremities; could not crouch, crawl, or climb; could only occasionally kneel, balance, or reach; and should avoid even moderate exposure to vibrations (R. at 255). In reaching his RFC determination, the ALJ considered Plaintiff's subjective statements of pain and other symptoms, but found him "less than fully credible" (R. at 257). The ALJ also considered medical evidence from the following: consultative orthopedic examiner, Michael Obrecht, D.O.; chiropractor, Matthew Germond, D.C.; disability analyst, C. Vriesema; physical therapist, Jay Todd Mansfield; treating physician, Laura Martin, D.O.; and non-examining orthopedic specialist, Richard S. Goodman, M.D. (R. at 256-57). In assessing these medical opinions, the ALJ gave "limited weight" to three opinions: Plaintiff's chiropractor because he was not an acceptable medical source, a March 7, 2003 report that the ALJ found to be from an "unknown source,"[6] and the opinions of treating physician, Dr. Martin because her opinions were "inconsistent with the results of a functional capacity evaluation on June 22, 2004" (R. at 256-57). However, the ALJ did not state what weight he assigned any other medical opinions of record (R. at 252-59). At step five, the ALJ found that Plaintiff was a younger individual at the time of his alleged onset of disability, that he had at least a high school education, and that his past work experience was skilled or semi-skilled but the skills were not transferable (R. at 258). The ALJ also elicited testimony from vocational expert ("VE") Victor G. Alberigi, who testified that a person with Plaintiff's vocational characteristics and RFC could perform work as a residential

---

[6] Although the ALJ asserts that this report was from an "unknown source," a review of the record reveals that the report was completed by Dr. Martin, one of Plaintiff's treating physicians. Her name appears on the report as "L. Martin, D.O." (R. at 257).

6

counselor, order clerk, and a dispatcher of maintenance services (R. at 258). Using Medical-Vocational Guideline Rule 201.21[7] as guide and considering the testimony of the VE, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (R. at 258-59).

### 2. Plaintiff's Claims

Plaintiff argues (a) that substantial evidence does not support the ALJ's finding that Plaintiff did not meet Listing 1.04A; (b) that the RFC is unsupported by substantial evidence; and (c) that the ALJ's conclusions at step five are necessarily flawed. Plaintiff's Brief, pp. 14-18.

### a. The ALJ's Analysis of Listing 1.04A is Flawed

Plaintiff argues that the ALJ's finding that Plaintiff did not meet Listing 1.04A is unsupported by substantial evidence of record where both the orthopedic medical consultant, Dr. Goodman, and Plaintiff's treating physician, Dr. Keo opined that Plaintiff met Listing 1.04A. Plaintiff's Brief, pp. 14-16.

As an initial matter, the Court notes that "the final responsibility for deciding" whether an impairment meets or equals a Listing is reserved to the Commissioner. 20 C.F.R. § 416.927(e)(2). Nevertheless, the Commissioner will "consider opinions from medical sources on issues such as whether [an] impairment[] meets or equals the

---

[7] Medical-Vocational Guideline Rule 201.21 requires a finding of not disabled when a claimant is a younger individual (45 to 49 years old), has a high school education or greater, and has skilled or semi-skilled past work but whose skills are not transferable. 20 C.F.R. Pt. 404, Subpt. P, App 2, Rule 201.21. The Court notes that as of February 16, 2006, Plaintiff was 50 years old and moved into the age category of closely approaching advanced age (50 to 54 years old). The ALJ did not discuss what Rule applied to Plaintiff as of February 16, 2006, but assuming the other vocational factors remained constant, rule 201.14 is analogous to Rule 201.21, which the ALJ used. However, it requires a finding of disabled. See 20 C.F.R. Pt. 404, Subpt. P, App 2, Rule 201.14. As Plaintiff has not objected to the ALJ's use of the Medical-Vocational Guideline Rules, the Court will not address this issue.

requirements of any impairment[] in the Listing of Impairments." Id. In evaluating such an opinion, "the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." Social Security Ruling 96-5p, 1996 WL 374183, at *3 (SSA 1996). Therefore, while Dr. Goodman's and Dr. Keo's opinions that Plaintiff meets Listing 1.04A are evidence that the ALJ had to consider, he was not bound by their opinions with respect to whether Plaintiff met the Listing. However, that is not to say that the ALJ's analysis at step three was without error.

At step three, a Plaintiff has the burden of proof to show that his impairments meet or medically equal a Listing. Naegele v. Barnhart, 433 F.Supp.2d 319, 324 (W.D.N.Y. May 31, 2006). To meet a Listing, a Plaintiff must show that his medically determinable impairment satisfies all of the specified criteria in a Listing. 20 C.F.R. §§ 404.1525(d), 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," such impairment does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (citing S.S.R. 83-19, 1983 WL 31248).

> Listing 1.04A, of Appendix 1, Subpart P, Regulations No. 4, states:
>
> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);…

20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A, § 1.04.

After a careful review of the record, the Court concludes that the ALJ's analysis

8

of Listing 1.04A is flawed in two respects. First, the ALJ improperly applied a heightened legal standard. In considering Listing 1.04A the ALJ concluded,

> [C]laimant does not meet this listing. His back disorder has not been accompanied by all of the medical findings required in listing 1.04A. For example, when examined by Dr. Obrecht on May 10, 2003, a straight leg raising test was negative bilaterally, and the claimant had no muscle atrophy of the left lower extremity.

(R. at 255). The ALJ's analysis implies that muscle atrophy is a "required" "medical finding" that Plaintiff lacked. However, Listing 1.04A does not require evidence of muscle atrophy. Instead, Listing 1.04A requires evidence of "motor loss," which may be demonstrated by either "atrophy with associated muscle weakness" or by "muscle weakness" alone. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A, § 1.04. This reading of Listing 1.04A is not merely the most reasonable construction grammatically, it is also supported by the language in the introduction to the musculoskeletal Listings. A portion of the introduction states "significant motor loss" may be shown by an "[i]nability to walk on the heels or toes, to squat, or to arise from a squatting position." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A, § 1.00(E)(1). Thus, an absence of muscle atrophy is not evidence that a claimant fails to meet Listing 1.04A, and to rely on such an absence is to apply an improper legal standard. See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.").

Second, the ALJ required greater evidence than the Listing actually demands with respect to the straight leg raising ("SLR") tests. The ALJ's second reason for finding

9

Plaintiff did not meet Listing 1.04A was a negative SLR test on May 10, 2003 (R. at 255). This reasoning ignores Plaintiff's positive SLR tests on May 24, 2002, June 11, 2002, another on June 11, 2002, June 13, 2002, April 24, 2003, and July 14, 2003 (R. at 111, 122, 134, 141,185, 195). The Court recognizes there were two other negative SLR tests on December 4, 2002 and February 17, 2003 (R. at 123, 129). However, the ALJ provided no rationale for rejecting the majority of positive SLR results in favor of the May 10, 2003 negative result. The ALJ effectively required Plaintiff to provide only positive SLR tests. However, the Listing introduction acknowledges that abnormal findings, such as positive SLR tests, "may be intermittent," and therefore "their presence over a period of time must be established by a record of ongoing management and evaluation." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A, § 1.00(D). The record in this case clearly establishes that Plaintiff's abnormal SLR test results persisted over a period of time (R. at 111, 122, 134, 135, 141, 185, 195). The ALJ's reliance on a single negative SLR test disregards the language of the Listing introduction, and clearly does not constitute substantial evidence to uphold his finding that Plaintiff does not meet Listing 1.04A.

    Based upon these two errors, the Court recommends remand for the ALJ to apply the proper legal standard described in Listing 1.04A and the Listing introduction. The ALJ's errors in analyzing Listing 1.04A are particularly troubling in this case because the record reveals evidence for each of the remaining criteria in Listing 1.04A. For example, an MRI of Plaintiff's lumbar spine showed nerve root compression in the form of a protrusion at L4-L5 "with mild encroachment on the neural foramina" and a protrusion at L5-S1 and joint enlargement "causing some encroachment on the neural

foramina" (R. at 118). The record demonstrates neuro-anatomic distribution of pain with tenderness and muscle spasms in Plaintiff's low back and numbness and weakness in Plaintiff's left leg (R. at 111, 117, 122-23, 128-29, 134-35, 148, 165, 174, 188, 190, 229-30, 364). Multiple examinations, including those by Plaintiff's neurosurgeon, Ernest R. Levy, M.D., and Plaintiff's orthopedic specialist John Jacquemin, M.D., revealed Plaintiff's spinal motion was limited (R. at 111, 122-23, 135, 141, 187, 196, 229). Dr. Levy documented Plaintiff's motor loss noting "a definite foot drop on the left with weakness of dorsiflexion and extensor hallucis longus" (R. at 122), which was also noted in other examinations and occasionally caused Plaintiff to fall (R. at 127-29, 131-32, 134, 190, 195). Plaintiff's muscle weakness was also documented in his inability or difficulty with heel and toe walking (R. at 128-29, 147) and a nerve conduction study performed by Dr. Levy showing that "the left L5 root innervated muscles are denervated" (R. at 117). Dr. Levy's findings also confirmed sensory loss in the L5 distribution (R. at 122), as did Dr. Jacquemin's and Dr. Obrecht's findings of decreased sensation (R. at 123, 148). Similarly, several examinations found depressed or changed reflexes (R. at 111, 122, 129). On remand, the ALJ should carefully consider all the evidence of record in applying the proper legal standard to an analysis of Listing 1.04A.

### b. The ALJ's RFC Finding that Plaintiff Could Sit for Six Hours is not Supported by Substantial Evidence

Plaintiff also argues that the ALJ erred "as a matter of law" because his RFC determination was "not consistent" with the RFC opinions of Dr. Martin, Plaintiff's treating physician, Mr. Mansfield, Plaintiff's physical therapist, and Mr. Germond, Plaintiff's chiropractor. Plaintiff's Brief, 13-14.

As an initial matter, the Court notes that a claimant's RFC is also an issue reserved to the Commissioner. 20 C.F.R. § 416.927(e)(2). Although the ALJ was bound to consider medical source opinions on the issue of Plaintiff's RFC, such as Dr. Martin's opinion,[8] he was not bound to come to the same conclusion. Id. Therefore, the ALJ did not err as a matter of law merely because his RFC determination differed from the RFC opinion of a particular medical source. See 20 C.F.R. § 416.927(e)(3) (stating the Commissioner "will not give any special significance to the source of an opinion on issues reserved to the Commissioner").

Nonetheless, in determining a claimant's RFC, the ALJ must consider "all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3); see Ferraris v. Heckler, 728 F.2d 582, 585 (2d Cir. 1984). The RFC determination must specify the exertional functions a claimant is capable of performing, which include the ability to sit, stand, walk, lift, carry, push and pull, as well as specifying the non-exertional functions a claimant is capable of performing, which include non-strength demands such as maintaining attention or concentration, and reaching, handling, or crouching. 20, C.F.R. §§ 404.1569a(b)-(c); Martone v. Apfel, 70 F.Supp.2d 145, 150 (N.D.N.Y. 1999). For an RFC to withstand judicial scrutiny, substantial evidence must support the findings for each exertional and non-exertional ability. See Martone, 70 F.Supp.2d at 150 (citing

---

[8] Under the regulations opinions from physical therapists and chiropractors are not considered medical opinions. See 20 C.F.R. § 416.927(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources . . ."); §416.913(d)(1) (listing chiropractors and therapists as "other" medical sources of evidence). Thus, the opinions of Mr. Mansfield and Mr. Germond are not weighted under 20 C.F.R. § 416.927 as medical opinions, but are merely evidence that the ALJ must consider in evaluating Plaintiff's RFC. See 20 C.F.R. §416.945(a)(3) ("[The Commissioner] will assess [a claimant's] residual functional capacity based on all of the relevant medical and other evidence."). Therefore, the consistency of the RFC with the evidence provided by Mr. Mansfield and Mr. Germond is addressed below in an assessment of whether substantial evidence supports the ALJ's finding.

LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); Pardee v. Astrue, 2009 WL 1941285, at *17 (N.D.N.Y. July 7, 2009).

In this case, the ALJ found the following:

The claimant has the [RFC] to lift and/or carry 15 pounds occasionally and less than ten pounds frequently, stand and/or walk for a total of two hours in an eight-hour workday (20 to 30 minutes at one time), and sit for a total of six hours in an eight-hour workday (30 minutes at one time). In addition, the claimant can do no repetitive pushing and/or pulling with either the upper or lower extremities, cannot crouch or crawl, cannot climb ladders, ropes, or scaffolds, can occasionally kneel or balance, can occasionally reach, and must avoid moderate exposure to vibrations.

(R. at 255). The ALJ concluded that Plaintiff could "perform a wide range of sedentary work" (R. at 257).[9]

As discussed below, the ALJ's RFC determination is largely supported by substantial evidence of record. However, substantial evidence does not support the ALJ's finding with respect to Plaintiff's ability to sit. Because of this failure, the Court recommends remand. See Martone, 70 F.Supp.2d at 150 (citing LaPorta, 737 F. Supp. at 183) (requiring substantial evidence to support each finding in an RFC); see also Pardee, 2009 WL 1941285, at *17.

The ALJ found that Plaintiff could occasionally lift and carry fifteen pounds and frequently lift and carry less than ten pounds (R. at 255). This finding is supported by Dr. Martin's opinion of March 7, 2003 that Plaintiff was limited to lifting and carrying ten to

---

[9] Sedentary work is defined as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and the other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

twenty-five pounds (R. at 126)[10] and her more restrictive opinion of November 5, 2003 in treatment notes indicating that Plaintiff cannot lift more than 20 pounds (R. at 192). The finding is also supported by medical orthopedic consultant, Dr. Richard Goodman, M.D., who reviewed Plaintiff's entire medical record and opined that he could frequently lift and carry up to ten pounds, and occasionally lift eleven to twenty pounds (R. at 345). It is also consistent with the opinion of consultative examining orthopedist, Dr. Obrecht, who indicated Plaintiff had a mild restriction for carrying (R. at 142). Finally, the lift and carry findings are generally supported by a lifting capacity test conducted on June 22, 2004, by Plaintiff's physical therapist, Mr. Mansfield, the results of which recommended that Plaintiff could occasionally lift and carry between thirteen and eighteen pounds, could frequently lift and carry between six and nine pounds, and could continuously lift and carry between three and four pounds (R. at 235-36). After the lifting capacity test, both Mr. Mansfield and Dr. Martin opined, on June 22, 2004 and July 13, 2004 respectively, that Plaintiff was limited to lifting and carrying just ten pounds occasionally and only three pounds frequently (R. at 239, 237-42). However, these more limited opinions were rejected by the ALJ "because they are inconsistent with the results of a functional capacity evaluation on June 22, 2004" (R. at 257). Especially in light of Plaintiff's own testimony that he could lift up to, but not more than fifteen or twenty pounds (R. at 309), the Court finds substantial evidence in the record supports the ALJ's finding that Plaintiff could occasionally lift and carry fifteen pounds and frequently lift and carry less than ten pounds.

---

[10] The Court notes that the ALJ considered this opinion evidence but did not realize that the report was authored by Dr. L. Martin, D.O., Plaintiff's treating physician (R. at 125-26, 256). Instead, the ALJ indicated that the report was "from an unknown source" and therefore afforded it "limited weight" (R. at 256). Plaintiff has not objected to this characterization or analysis.

Similarly, the ALJ's finding that Plaintiff could stand and walk for two hours each day, at intervals of twenty to thirty minutes, is supported by substantial evidence. On March 7, 2003, Dr. Martin indicated Plaintiff was "greatly limited 50%" in the ability to stand and walk (R. at 126). On April 24, 2003, Mr. Germond, Plaintiff's chiropractor, opined Plaintiff was limited to standing and walking up to two hours a day (R. at 142). On May 10, 2003, consultative orthopedic examiner Dr. Obrecht found Plaintiff had a mild restriction to "prolonged standing greater than 6 hours" (R. at 149). On November 5, 2003, in her treatment notes, Dr. Martin indicated that Plaintiff needed to sit and stand alternately (R. at 192). On June 22, 2004, Mr. Mansfield opined Plaintiff was limited to standing and walking no more than four hours a day at twenty minute intervals and Dr. Martin concurred with that opinion on July 13, 2004 (R. at 232, 237-38). Almost three years later, consultative orthopedic reviewing physician, Dr. Goodman also opined Plaintiff was limited to standing and walking three hours total in an eight hour workday at intervals of no more than two hours at a time (R. at 346). Finally, Plaintiff's testimony supports this finding because he indicated that at his part-time position at the hardware store he spent seventy-five percent of his time standing or walking (R. at 391). It is clear to the Court that substantial evidence of record supports the ALJ's finding that Plaintiff can stand and walk two hours out of an eight hour workday at intervals of twenty to thirty minutes.

The ALJ's findings with respect to Plaintiff's nonexertional abilities are also supported by substantial evidence. The record supports the ALJ's findings that Plaintiff could: do no repetitive pushing or pulling (R. at 142, 149, 233); do no crouching or crawling (R. at 232, 348); do no climbing on ladders, ropes or scaffolds (R. at 149, 232,

15

238, 348); only occasionally kneel, balance, or reach (R. at 143, 232, 238, 348); and have no more than moderate exposure to vibrations (R. at 233).

However, the ALJ's finding that Plaintiff could sit for a total of six hours in an eight hour workday is not supported by substantial evidence of record. Plaintiff testified that at his part time job at the hardware store he spent only twenty-five percent of his time seated and that generally he can sit for intervals of fifteen minutes (R. at 391, 407). In 2003, Dr. Martin opined Plaintiff had a "50%" limitation to sitting (R. at 126), and later indicated Plaintiff should not drive for more than one hour (R. at 192), while Mr. Germond opined Plaintiff was limited to sitting less than six hours in a day (R. at 142). In 2004, Mr. Mansfield opined Plaintiff was limited to sitting a total of two hours in a workday at fifteen minute intervals and Dr. Martin concurred but further limited Plaintiff's driving time to a half hour (R. at 232, 238). Plaintiff also indicated that he used a gel cushion for sitting (R. at 106). More recently, in 2007, Dr. Goodman opined that Plaintiff was limited to sitting a total of three hours in a workday at intervals of no more than two hours (R. at 346).

In fact, the only indication in the record that Plaintiff can sit for six hours in a workday is the RFC assessment completed by disability analyst, C Vriesema (R. at 151-56). The ALJ referred to the analyst as a "State Agency disability examiner," possibly because he believed C Vriesema was a State Agency examining physician. See generally Castano v. Astrue, 2009 WL 2855823, at *10 (E.D.N.Y. Sept. 4, 2009) (finding that "[t]reating a disability analyst as a doctor can be a fundamental error"). While it is not clear whether the ALJ treated the disability analyst as a doctor, it is clear that he

relied on the analyst's opinion that Plaintiff could sit for six hours in a workday.[11] See Hopper v. Comm'r of Soc. Sec., 2008 WL 724228, at *10 (N.D.N.Y. March 17, 2008) (noting that a disability analyst is not an acceptable medical source and therefore his opinion is properly given no weight); see also 20 C.F.R. §§ 404.1527(a)(2), (d) (limiting the evaluation of medical opinions to those from acceptable medical sources). In light of the contrary evidence in this case, including medical opinions, objective medical evidence, and other evidence of record, the disability analyst's opinion that Plaintiff could sit for six hours is not substantial evidence in this case. Therefore, the Court recommends remand.

### c. The ALJ's Remaining Analysis is Necessarily Flawed

Plaintiff further argues that the ALJ's conclusions at step five are unsupported. Plaintiff's Brief, pp. 16-18. Because this Court has already concluded that the ALJ improperly assessed Listing 1.04A and the Plaintiff's RFC, the ALJ must reconsider the remaining portions of the sequential analysis.

### IV. Conclusion

Based on the foregoing, the Court recommends that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

---

[11] In his discussion of the evidence as it pertained to Plaintiff's RFC, the ALJ concluded: "Considering the claimant's activities, including hunting, fishing, and part-time work, the opinions regarding the claimant's physical limitations offered by Mr. Obrecht, the State Agency disability examiner, and Dr. Goodman, as well as the functional capacity evaluation results from June 22, 2004, the undersigned concludes that the claimant can perform a wide range of sedentary work . . ." (R. at 257). Because the ALJ listed the disability analyst as part of the evidence he relied upon, and because the disability analyst's opinion was the only indication in the record that Plaintiff could sit for six hours, the Court can only conclude that the ALJ relied on the disability analyst's opinion to conclude Plaintiff's sitting ability.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

>DATED: November 23, 2009
>Syracuse, New York

### Orders

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>.** Thomas v. Arn, 474 U.S. 140 (1985); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir.1989); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir.1988).

**SO ORDERED**.                    DATED: November 23, 2009
                                    Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge